IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David C.,[1] | ) Case No.: 6:23-cv-5176-SAL |
|         Plaintiff, | ) |
| vs. | ) |
| Carolyn Colvin, Acting Commissioner of Social Security Administration, | ) **OPINION AND ORDER** |
|         Defendant. | ) |

This matter is before the court for review of the July 12, 2024 Report and Recommendation of United States Magistrate Judge Kevin F. McDonald (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 14.] In the Report, the magistrate judge recommends the Commissioner's final decision denying Plaintiff's claim for Social Security disability benefits be affirmed. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 18.] Defendant filed a timely reply to Plaintiff's objections. [ECF No. 19.] For the reasons outlined herein, the court adopts the Report and affirms the Commissioner's final decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## STANDARD OF REVIEW

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final

determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). In the absence of specific objections to portions of the Report, this court is not required to explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

The Report sets forth the administrative proceedings and applicable law, which the court incorporates herein without a full recitation. [ECF No. 14.] Plaintiff objects to the magistrate judge's finding that the Administrative Law Judge ("ALJ") properly evaluated an opinion from his treating psychiatrist, J. Christopher Caston, M.D. ("Dr. Caston"). [ECF No. 18.] Given the specificity of Plaintiff's objection, the court reviews it de novo.

Plaintiff's argument centers on a November 13, 2019 interview with Dr. Caston that was memorialized by Plaintiff's counsel and signed by Dr. Caston. *See* Tr. at 358. Dr. Caston reported Plaintiff endorsed delusions that God was speaking to him through colors in his environment. Tr. at 359. He noted Plaintiff's delusions had initially manifested in 1999; had persisted, despite use of Seroquel; and had diminished somewhat with a recent change in medications. *Id.* He indicated he had previously decreased

3

Plaintiff's Seroquel dose because it had caused him to sleep for 12 to 14 hours daily. *Id.* He noted he had prescribed Clonazepam to reduce Plaintiff's anxiety, but Plaintiff continued to experience rapid thought processes that sometimes kept him awake all night and necessitated he collapse and sleep throughout the following day. *Id.* He stated Plaintiff's academic and creative abilities were reduced to about one-tenth of their prior levels. *Id.* He noted Plaintiff was reclusive and paranoid about his condition. *Id.* He indicated Plaintiff was "unable to attend any sort of work without being unable to function." *Id.* He stated Plaintiff had trouble communicating. *Id.*

In his decision, the ALJ summarized Dr. Caston's opinion and addressed it as follows:

> The undersigned considered the opinions and observations contained in the attorney-draft letter that Dr. Caston signed, but [found] them to be unpersuasive. The restrictions contained in the letter are vague, overly broad, and fail to state specific functional restrictions. Although, Dr. Caston does have a treating relationship with the claimant, the opinions contained in his letter are inconsistent with, and not supported by, the overall medical evidence of record. Dr. Caston's own records noted improvements and deteriorations in functioning that Dr. Caston treated with medication management. Although Dr. [C]aston noted intermittent deteriorations in functioning, he also referenced situational stressors contributing to the deteriorations. Dr. Caston's assertion that the claimant would be "unable to attend any sort of work" is inconsistent with his examination findings that consistently showed the claimant to arrive on time for appointment, and be cooperative, fully oriented, appropriately dressed, and have good hygiene (Exhibits 2F, 6F). Dr. Caston's records do not support his opinion that the claimant would be unable to sustain work. Additionally, Dr. Caston's opinion is inconsistent with the claimant's self-reported activities of daily living. In the function report from March 11, 2019, [claimant] reported the ability to prepare simple meals and do some light household chores. He could drive, go out alone, attend to his personal hygiene needs, and shop in stores and via computer. He wrote he was able to count change, pay bills, and manage his personal finances, but indicated some issues remembering to pay bills (Exhibit 6F). Likewise, during the consultative examination on January 2, 2019, the claimant reported the ability to drive, shop in stores,

use a computer, pay bills online, and attend his personal care needs. He participated in meal preparation and occasionally performed household chores such as cleaning, laundry, and some yard work (Exhibit 3F). The self-reported activities of daily living are inconsistent with Dr. Caston's opinion regarding the claimant's ability to sustain work.

Dr. Caston's opinion is also not supported by Dr. Ruffing's consultative exam noting normal speech, appropriate eye contact, and linear, logical, relevant, and coherent thought processes, with some poverty of thought. Dr. Ruffing noted that the claimant's thought content did not contain evidence of psychosis or lack of reality contact. The claimant was able to attend and focus during the interview and scores from Folstein Mini-mental status exam suggested mental status functioning to be within normal limits. Dr. Ruffing did observe that the claimant struggled with full focus and attention and exhibited some slowing with speed of cognitive processing consistent with psychomotor retardation. Dr. Ruffing found the claimant could understand and respond to the spoken work, would likely have a moderate limitation in an independent functioning due to depression, and would struggle to interact appropriately with others because of depression. The claimant could understand, comprehend, and complete simple tasks, but might struggle with more complex task because of depression. The claimant had a moderate degree of impairment with concentration and memory, but could manage his finances if awarded benefits (Exhibit 3F). The findings and limitations of Dr. Ruffing are not consistent with Dr. Caston's recommended severe limitations.

Dr. Caston's opinion is also inconsistent with other treatment records of evidence. Treatment records from Mr. Friddle contained relatively normal examination findings and noted that the claimant denied depressive symptoms. Mr. Friddle described the claimant's depression as situational in nature and noted that the claimant refused offered anti-depressants to help control his symptoms (Exhibit 4F). Finally, Dr. Caston's opinion is not supported by the subsequent mental status exams from Dr. Al Edwards in 2022, noting the claimant to be alert and fully oriented, with guarded attitude. Exam described mood as depressed, anxious, angry, and irritable, and affect as congruent. Exam noted intact memory, attention, concentration, and impulse controls. The claimant had fair judgment and fair, impaired insight. On September 30, 2022, Dr. Edwards wrote, "Overall, the patient seemed to be in a better mood, less depressed, less anxious than his last appointment." Mental status examination showed the claimant's mood to be, "OK, some low-grade depression." (Exhibit 10F). Based on the totality of the evidence, including the claimant's self-reported activities of daily living, the undersigned finds Dr. Caston's opinion to be

5

>   unpersuasive, as it is unsupported by his treatment records and inconsistent with the overall medical evidence of record.

Tr. at 385–87.

In his brief, Plaintiff argued the ALJ's decision was not supported by substantial evidence because he failed to properly evaluate the persuasiveness of Dr. Caston's opinion, which contained work-preclusive limitations. [ECF No. 7 at 24–25.] He maintained that the ALJ erred in finding Dr. Caston's opinions were "vague, overly broad, and fail[ed] to state specific functional restrictions" without obtaining additional information or clarification. *Id.* at 28. He considered erroneous the ALJ's evaluation of the consistency and supportability of Dr. Caston's opinion because the ALJ misinterpreted periods of improvement characteristic of chronic depression. *Id.* at 28–29. He contended the ALJ erred in relying on his ability to attend medical appointments, present with "select normal findings," and perform certain activities of daily living ("ADLs") as inconsistent with Dr. Caston's opinion that he would be "unable to attend any sort of work" because the ALJ did not explain how this evidence showed he could work on a regular and continuing basis and did not address all the evidence. *Id.* at 30–31. He asserted the ALJ did not adequately explain his conclusion that the findings James Ruffing, Psy. D. ("Dr. Ruffing"), were inconsistent with Dr. Caston's opinion because he failed to reconcile that the opinions contained both consistencies and conflicts. *Id.* at 31.

In the Report, the magistrate judge concluded substantial evidence supported the ALJ's evaluation of Dr. Caston's opinion. [ECF No. 14.] He found "the majority of the plaintiff's arguments reference[d] treatment records that were evaluated and considered by the ALJ in his decision, meaning that the plaintiff requests that this court reweigh

evidence and come to a different conclusion." *Id.* at 7. He considered "unavailing" Plaintiff's argument that the ALJ was required to request clarification from Dr. Caston regarding the opined limitations, explaining the duty to develop the record had not been triggered and Plaintiff was responsible for presenting a complete opinion from Dr. Caston. *Id.* at 7–8. He differentiated the ALJ's consideration of the evidence from that of the ALJ in *Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341 (4th Cir. 2023), noting that this ALJ "detailed the plaintiff's longitudinal treatment records in finding them unsupportive of and inconsistent with Dr. Caston's opined limitations" and that different regulations governed the evaluation of opinion evidence in the two cases. *Id.* at 8–9. He further pointed out that, unlike the plaintiffs in *Shelley C.* and *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251 (4th Cir. 2017), Plaintiff had not argued the ALJ erred in considering his subjective complaints and had, thus, waived the issue. *Id.* at 9.

The magistrate judge found substantial evidence supported the ALJ's conclusion that Dr. Caston's treatment notes failed to support his opined limitations. *Id.* at 9–10. He noted the ALJ's references to Dr. Caston's observations during examinations, Plaintiff's conservative treatment and progress toward primary and secondary goals, a January 2020 letter indicating he was not a danger to his children or others and was compliant with treatment, and Dr. Caston's notations of improvements and deteriorations in functioning that were generally related to situational stressors. *Id.*

The magistrate judge also found substantial evidence supported the ALJ's conclusion that Dr. Caston's opinion was inconsistent with other record evidence. *Id.* at

7

11. He noted the ALJ adequately explained and supported his finding that Plaintiff's ADLs were inconsistent with Dr. Caston's opinion, while acknowledging Plaintiff's use of limiting language in describing some of his activities. *Id.* He concluded the ALJ's finding of inconsistency between Dr. Caston's opinion and Dr. Ruffing's observations was supported because Dr. Caston provided much more extreme limitations that were inconsistent with findings on the Mini-Mental State Examination ("MMSE") and Dr. Ruffing's impressions that Plaintiff could manage his finances if awarded benefits, could understand, comprehend, and complete simple tasks, and had only moderate impairments to concentration and memory. *Id.* at 12–13. He explained the ALJ's finding of inconsistency between Dr. Caston's opinion and the records of physician assistant Joseph Friddle ("Mr. Friddle") were supported by Mr. Friddle's regular mention of normal exam findings, descriptions of Plaintiff's depression as situational, and notation that he declined to add additional medication to help control his symptoms. *Id.* at 13–14. He acknowledged that some of Mr. Friddle's records predated Plaintiff's alleged onset date, but noted the ALJ recognized that most of the visits were in the same month as the alleged onset date or occurred during the relevant period. *Id.* at 13. The magistrate judge rejected Plaintiff's argument that the ALJ erred in citing inconsistency between Dr. Caston's opinion and notations of improvement from Al Edwards, M.D. ("Dr. Edwards"), as speculatory. *Id.* at 14. He wrote: "As noted by the ALJ, Dr. Edward's treatment records, noting substantial improvement over three treatment visits, with limited abnormal examination findings, were not consistent with Dr. Caston's opined limitations.

8

As such, the ALJ appropriately found that Dr. Caston's opinion was not consistent with treatment records from Dr. Edwards." *Id.*

In his objections to the Report, Plaintiff argues the magistrate judge misinterpreted his argument as a request that the court reweigh the evidence and come to a different conclusion. [ECF No. 18 at 1–2.] He asserts he is requesting the court remand the case to allow the ALJ to properly evaluate the evidence in the first instance because the ALJ merely summarized the evidence and failed to provide a reasoned assessment explaining why he chose one side of the evidence over the other. *Id.* at 2–3, 5. The Commissioner argues the magistrate judge properly declined to reweigh the evidence and adhered to the court's narrow scope of review. [ECF No. 19 at 2.] He maintains Plaintiff is presenting a new argument by claiming that the ALJ merely summarized his treatment notes instead of explaining his findings. [ECF No. 19 at 3.] He asserts the ALJ went "point by point," stated each problem he identified, and discussed the evidence that supported each problem. *Id.*

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the court stated, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Although Plaintiff claims he is not requesting that the court reweigh the evidence, but, rather, remand the case for the ALJ to reconsider the evidence, the magistrate judge aptly noted the ALJ specifically considered and evaluated the majority of the treatment records Plaintiff references in evaluating Dr. Caston's opinion. The excerpt above reflects more than the

9

ALJ's summary of the evidence and permits the court to follow his reasons for finding Dr. Caston's opinion unpersuasive. Accordingly, the court overrules Plaintiff's objection that the magistrate judge misinterpreted his argument as an invitation to reweigh the evidence.

Plaintiff cites *Oakes v. Kijakazi*, 70 F.4th 207 (4th Cir. 2023), as supporting his assertion that the magistrate judge erred by rejecting his argument that the ALJ should have sought clarification for parts of Dr. Caston's opinions he considered vague. [ECF No. 18 at 3–5.] The Commissioner asserts this case differs from *Oakes* in that it contains sufficient evidence from which the ALJ could decide the case. [ECF No. 19 at 3.] He claims the magistrate judge did not err in concluding the ALJ was not required to solicit additional information from Dr. Caston because he had found the evidence to be complete. *Id.* at 5.

> In *Oakes*, the court explained:
>
> [A]n ALJ will render a disability determination based on the available evidence when that evidence is consistent and sufficient. 20 C.F.R. § 404.1520b(a). Conversely, an ALJ will not render a determination when the available evidence is incomplete, insufficient, or inconsistent." *Id.* § 404.1520b(b). Evidence is incomplete or insufficient "when it does not contain all the information [that the ALJ] need[s] to make [its] determination." *Id.* Evidence is inconsistent "when it conflicts with the other evidence, contains and internal conflict, [or] is ambiguous." *Id.* If the available evidence suffers from any of these inadequacies, an ALJ will determine "the best way" to resolve the issue, which may include one or more of four paths forward: (1) recontacting a medical source for clarification; (2) requesting additional existing evidence; (3) asking the clamant to undergo a consultative examination; or (4) asking the claimant or others for more information. *Id.* § 404.1520b(b)(2)(i)–(iv). If "there are inconsistencies in the evidence that [the ALJ] cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [a claimant is] disabled, [the ALJ] will make a

determination or decision based on the evidence [it possesses]." *Id.* § 404.1520b(b)(3).

70 F.4th at 212–13.

The court found that "when an administratively ordered consultative examiner's opinion contains what ought to be an easily clarified ambiguity on a key issue, it logically flows that an ALJ must engage in a simple § 404.1520b(b)(2) inquiry." *Id.* at 214. This case is distinguishable from *Oakes*, where the ambiguity concerned a consultative examiner's impression that the claimant should use an ambulatory device. Here, the ambiguity arose from an opinion Plaintiff's counsel obtained from Dr. Caston, as opposed to an opinion the ALJ secured from a consultative examiner after sending the claimant for an exam calculated to assess his abilities and limitations. As the court noted in *Oakes*, although "the administrative hearing process is not an adversarial one," it is still "not within the purview of an ALJ to help a claimant accumulate favorable evidence." *Id.* at 213. The magistrate judge properly concluded that the ALJ was not required to "act as 'substitute counsel' to obtain a more favorable, supported, and consistent opinion for the plaintiff." [ECF No. 14 at 8.]

In *Oakes*, the court concluded that, to the extent the examiner's reasons for the recommendation were ambiguous, the ALJ should have sought clarification from the examiner. *Id.* at 213. This could be accomplished through a simple inquiry to the consultative examiner asking him to cite the evidence supporting his opinion.

The ambiguities in Dr. Caston's opinion could not be resolved as simply as those in *Oakes*. The ALJ noted Dr. Caston's opinions were "vague, overly broad, and fail[ed] to state specific functional restrictions." Tr. at 385. In accordance with 20 C.F.R. §

11

404.1520b(b)(2), the ALJ determined that "the best way" to resolve the issue was to evaluate the opinion in light of the other evidence of record. Unlike the "extremely sparse" record in *Oakes*, 70 F.4th at 213, the record in this case contained additional evidence, including a consultative examination report, Dr. Caston's treatment records, other providers' treatment records and impressions, and Plaintiff's self-reported daily activities from which the ALJ could glean information to resolve the ambiguities. Thus, he permissibly relied on means other than recontacting Dr. Caston for clarification. Accordingly, the court overrules Plaintiff's objection on this basis and agrees with the magistrate judge's assessment that the ALJ had no duty to recontact Dr. Caston to request he supplement his vague opinion.

Plaintiff claims the magistrate judge misinterpreted his argument regarding parallels between this case and *Shelley C.* because he was not arguing for application of the same standard in evaluating the medical opinion, but was pointing out that both cases contained evidence of "fleeting periods of improvement" that were "reflective of the unique nature of mental health impairments." [ECF No. 18 at 5.] He contends that the ALJ's citing of positive and negative findings did not satisfy his duty of explanation. *Id.* He argues the magistrate judge overlooked the ALJ's failure to properly consider the overall pattern of his condition, which included waxing and waning of symptoms requiring medication management, both when he was experiencing situational stressors and when he was not. *Id.* at 6–7. He maintains the magistrate judge erred in concluding the ALJ adequately supported his rejection of Dr. Caston's opinion that he could not engage in any sort of work because the ALJ cited a mix of positive and negative findings

12

and did not explain how he had reached his conclusion. *Id.* at 7. The Commissioner argues the magistrate judge correctly found the ALJ's consideration of the evidence in this case distinguishable from that of the ALJ in *Shelley C.* and that the ALJ thoroughly explained his findings. [ECF No. 19 at 6–8.]

In *Shelley C.*, the court concluded the ALJ did not properly evaluate the plaintiff's treating physician's opinion in accordance with 20 C.F.R. 404.1520, the regulation applicable to cases filed at that time. However, as the magistrate judge correctly noted, 20 C.F.R. § 404.1520 is not applicable here because the claim was filed later. The magistrate judge appropriately noted the ALJ was required to consider the medical opinions of record in accordance with 20 C.F.R. § 404.1520c, which provides that the adjudicator is not to defer to or give any specific weight to a medical opinion based on its source. 20 C.F.R. § 404.1520c(a). The ALJ must consider in the decision how persuasive he found all the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). However, he is only required to specifically articulate how he considered the supportability and consistency factors because they are considered the most important factors in assessing the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(a), (b)(2). Applicable to the supportability evaluation, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency factor, "[t]he more consistent a

13

medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's conclusions as to the supportability and consistency of a medical opinion must be supported by substantial evidence.

The magistrate judge appropriately concluded the ALJ's decision did not contain the errors addressed in *Shelley C.* The ALJ acknowledged he could provide no greater elaboration of his consideration of waxing and waning symptoms in Dr. Caston's treatment notes because those records lacked explanation. *See* Tr. at 384 ("Dr. Caston did not provide any examples of how the claimant was experiencing improvement or deterioration in any of these areas (Exhibit 2F/6–15; 6F/1–11; 7F/1–6; 9F/5–26). . . . Dr. Caston's repeated use of the phrase 'possible deterioration in functioning' is unhelpful in establishing a reference point for the claimant's baseline. Additionally, the lack of specific examples of the claimant's improvement or deterioration decreased the probative value of these treatment records."). Consequently, the ALJ relied on other evidence in evaluating whether Plaintiff's waxing and waning symptoms prevented him from working. He cited Dr. Caston's "examination findings that consistently showed the claimant to arrive on time for appointments, and be cooperative, fully oriented, appropriately dressed, and have good hygiene (Exhibits 2F, 6F)" as being contrary to his opinion that Plaintiff would be "unable to attend any sort of work." Tr. at 386. He considered periods of exacerbated symptoms, but concluded they were related to situational stressors as Plaintiff generally "demonstrated an ability to execute a number of important, domestic, and community activities of daily living independently,"

14

"consistently showed intact memory and no significant limitations in attention, concentration, or cognition," "related information in a rational, coherent, and sequential fashion at multiple medical appointments," had adequate grooming appearance, and hygiene, and demonstrated no significant issues with insight or judgment. Tr. at 379–81. The magistrate judge's Report reflects a thorough recount of the ALJ's explanation as to how Dr. Caston's treatment notes did not support the opined limitation. *See* ECF No. 14 at 9–10. He correctly noted that the ALJ explained how the evidence supported a conclusion that Plaintiff could engage in a range of work with certain non-exertional limitations, which accounted for his mild and moderate mental limitations. The ALJ's decision shows that he addressed the mix of positive and negative findings in Dr. Caston's records, noting both that Dr. Caston's records failed to explain indications of deterioration and that his impressions had limited probative value given "their repetitive nature with only subtle variations." Tr. at 384.

The magistrate judge further explained how other evidence of record, including Dr. Caston's January 2020 letter, his conservative treatment of Plaintiff, and his notations that Plaintiff continued to make progress toward his primary and secondary goals further bolstered the ALJ's conclusion that Dr. Caston's opinion was generally unsupported by his treatment records.

To the extent Plaintiff challenges the magistrate judge's citation to additional records and reasons not referenced by the ALJ, the court overrules this challenge. Pursuant to sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter, upon the pleadings and *transcript of the record*, a judgment affirming, modifying, or

15

reversing the decision of the Commission of Social Security . . . ." (emphasis added). Further, as noted by the Commissioner, the magistrate judge, as opposed to the ALJ, characterized Plaintiff's treatment as conservative. Therefore, any error in so-characterizing the treatment did not affect the ALJ's conclusion.

The magistrate judge appropriately rejected Plaintiff's argument that the ALJ erred in citing his ADLs as contrary to Dr. Caston's opinion. As the magistrate judge noted, Plaintiff's failure to raise an allegation of error regarding the ALJ's evaluation of his subjective allegations renders that issue waived. *See Shinaberry v. Saul*, 952 F.3d 113, 124 n.5 (4th Cir. 2020). The magistrate judge thoroughly explained how the ALJ articulated his conclusion regarding Plaintiff's ADLs. [ECF No. 14 at 11.] Moreover, the ALJ supported his conclusion that Plaintiff's ADLs were generally consistent with greater functional abilities than those endorsed by Dr. Caston by citing to the abilities he endorsed in his reports, which significantly outnumbered his reported limitations. *See* Tr. at 386; *see also* Tr. at 379–80.

Plaintiff appears to suggest the magistrate judge overlooked the ALJ's failure to reconcile mixed examination findings from Dr. Ruffing, Dr. Friddle, and Dr. Edwards with his conclusion that their findings were inconsistent with Dr. Caston's opinion. [ECF No. 18 at 8–10.] The magistrate judge thoroughly addressed this argument in the Report, noting the ALJ explained that Dr. Caston's opinion presented "extreme limitations" in comparison to Dr. Ruffing's findings and that Dr. Caston's impression that Plaintiff "would be unable to attend any work and had reduced academic/creative abilities was contrary to the MMSE results and Dr. Ruffing's indication that Plaintiff could manage his

16

finances if awarded benefits. *See* ECF No. 14 at 12 (citing Tr. at 385–86). The magistrate judge further explained that "the alleged abnormal findings" in Mr. Friddle's notes were not his examination findings, but instead "were subjective symptoms reported by the plaintiff." *Id.* at 13. He pointed out that at "every treatment visit between December 2016 and January 2018 with Mr. Friddle, the plaintiff had a euthymic and stable mood, a congruent affect, clear sensorium, full orientation, intact short and long term memory, normal concentration and focus, regular speech, average fund of knowledge, average judgment and insight, appropriate dress and hygiene, logical thought process, no psychosis, and no gross cognitive deficits," which "as recognized by the ALJ, were inconsistent with the extreme limitations opined to by Dr. Caston." *Id.* at 13–14. Finally, the magistrate judge appropriately rejected Plaintiff's argument that the improvement noted by Dr. Edwards might have been only temporary, as such argument was merely speculatory. *Id.* at 14. The court agrees. Accordingly, the court overrules Plaintiff's objection and finds the magistrate judge relied on a sufficient explanation by the ALJ in concluding substantial evidence supported his evaluation of the consistency factor.

    In sum, the magistrate judge properly concluded substantial evidence supported the ALJ's evaluation of the supportability and consistency of Dr. Caston's opinion in accordance with 20 C.F.R. § 404.1520c.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record in this case, the court adopts the Report, ECF No. 14, and affirms the Commissioner's decision.

IT IS SO ORDERED.

December 19, 2024                           Sherri A. Lydon  
Columbia, South Carolina               United States District Judge